USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/7/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAYMOND THOMAS and WILLIAM PORTER,

individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

SHILOH INDUSTRIES, INC., RAMZI HERMIZ, and THOMAS M. DUGAN,

    Defendants.

15 CV 7449 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, DISTRICT JUDGE:

On March 23, 2017, this Court issued an Opinion and Order granting the Defendants' motion to dismiss Plaintiffs' Corrected Amended Complaint ("CAC") (Doc. No. 38). Plaintiffs now move for reconsideration of the Court's decision pursuant to Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3. For the foregoing reasons, Plaintiffs' motion is GRANTED in part and DENIED in part. Plaintiffs are granted limited leave to amend their complaint, as set forth below.

1

## I. BACKGROUND

On September 21, 2015, Plaintiffs brought this putative class action against Shiloh Industries ("Shiloh") and two of its individual directors, Ramzi Hermiz and Thomas M. Dugan ("Individual Defendants"; collectively, "Defendants"). Plaintiffs asserted claims under Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 (the "Exchange Act"), and Section 20(a) of the Exchange Act. Shiloh Industries manufactures and distributes equipment used to build automobiles. CAC ¶ 2. During the class period, Ramzi Hermiz served as the president and CEO of Shiloh Industries. *Id.* ¶ 28. Thomas Dugan served as the company's treasurer and vice president of finance. *Id.* ¶ 29.

Plaintiffs alleged that Defendants perpetrated an accounting fraud at Shiloh's manufacturing facility in Wellington, Ohio, and that this fraudulent accounting artificially inflated Shiloh's net income. *Id.* ¶¶ 3-8. When Shiloh publicly revealed the alleged fraud, its stock price plummeted. Defendants moved to dismiss the Complaint under Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act (PSLRA), on the ground that Plaintiffs failed to state with particularity facts sufficient to allege scienter on the part of both the Individual Defendants and Shiloh Industries as a corporation.

Plaintiffs proffered two separate theories of scienter. First, they argued that Individual Defendants Hermiz and Dugan were aware of, or recklessly disregarded, evidence of the fraudulent accounting. *Id.* ¶¶ 18, 30, 58-59. Plaintiffs argued that the employee who committed the accounting fraud at the company's Wellington Facility, the Wellington Controller, "was under immense pressure to hit impossible targets," and the Individual Defendants turned a blind eye to, or perhaps even implicitly encouraged, his behavior, so long as he met the company's financial objectives. *Id.* ¶¶ 17-19, 52-56, 69.

Second, Plaintiffs alleged that the Company itself acted with scienter. Plaintiffs noted that "[t]he Wellington Controller furnished the false and misleading accounting entries to Defendants with the knowledge that they would be incorporated into Shiloh's publicly filed financial statements." (Mem. in Opp'n to Mot. to Dismiss, 24). Plaintiffs argued that because the Wellington Controller acted as an agent of Shiloh, his scienter could be imputed to the company, resulting in a violation of the Exchange Act on the part of the Defendant Shiloh Industries.

In order to allege scienter on the part of the Individual Defendants, Plaintiffs had to plead either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness. *ECA & Local 134 IBEW Joint Pension Tr. of Chi. V. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). Plaintiffs did not offer evidence that the Individual Defendants had a motive to defraud investors. Instead, they offered circumstantial evidence that the Individual Defendants either knew of, or recklessly disregarded, the accounting fraud. This evidence included: (1) the confidential witness allegations concerning the Individual Defendants' access and attention to the accounting misstatements; (2) the suspicious circumstances surrounding the resignations of the Wellington Controller and his direct boss, the Group Controller, and Defendant Dugan's being relieved of his accounting responsibilities by the company's Audit Committee; (3) the manner in which Defendants responded to the fraud; (4) the importance of the Wellington Facility to Shiloh's profitability; (5) the magnitude of the fraud; and (6) the Sarbanes-Oxley certifications signed by the Individual Defendants. (Mem. in Opp'n, 7-8).

Guided by the Supreme Court's decision in *Tellabs*, this Court viewed Plaintiffs' separate scienter allegations holistically. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

323 (2007). The Court then granted Defendants' motion to dismiss on the ground that Plaintiffs failed to adequately allege scienter on the part of Defendants Ramzi and Dugan. (O & O, 12-13). After holding that Plaintiffs had failed to adequately plead scienter on the part of the Individual Defendants, the Court did not address whether the Wellington Controller's scienter could be imputed to the corporation. Plaintiffs do not presently contest the Court's previous ruling with respect to the Individual Defendants. Rather, Plaintiffs now ask the Court to consider whether they have sufficiently plead scienter on the part of Defendant Shiloh Industries.

## II. STANDARD GOVERNING MOTIONS FOR RECONSIDERATION

"[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (Berman, J.) (internal quotation marks omitted). To prevail on a motion for reconsideration, "the moving party must demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision." *Montanile v. Nat'l Broad Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002) (Marrero, J.). "A motion for reconsideration may not be used to advance new facts, issues, or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001) (Leisure, J.). The standard is "strict in order to dissuade repetitive arguments on issues that have already been considered fully by the court." *Travelers Ins. Co. v. Buffalo Reinsurance Co.*, 739 F. Supp.

4

209, 211 (S.D.N.Y. 1990) (Cannella, J.) (quoting *Caleb & Co.*, 624 F.Supp. 747, 748 (S.D.N.Y 1985) (Sweet, J.).

Because the Court did not address Plaintiffs' corporate scienter claim in its March 23, 2017 Opinion and Order, Plaintiffs do not file this motion to advance new facts or in the hope of relitigating issues already decided. The Court will thus now consider whether Plaintiffs have adequately plead scienter on the part of Shiloh Industries.

### III.   DISCUSSION

#### *Standard for Finding Corporate Scienter*

Under the law of this Circuit, a plaintiff can show corporate scienter by pleading facts sufficient to create a strong inference either (1) that "someone whose intent could be imputed to the corporation acted with the requisite scienter," *Teamsters Local 445 Freight Division Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 195-196 (2d Cir. 2008), or (2) that "a corporate statement is so important and dramatic that it 'would have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false.'" *Vining v. Oppenheimer Holdings Inc.*, 2010 WL 3825722 at *13 (S.D.N.Y. Sept. 29, 2010) (citing *Teamsters Local 445*, 531 F.3d at 196 (internal citation omitted)). "In most cases, the most straightforward way to raise such an inference for a corporate defendant will be to plead it for an individual defendant. But it is possible to raise the required inference with regard to a corporate defendant without doing so with regard to a specific individual defendant." *Teamsters Local* at 195.

5

The parties do not dispute that the Wellington Controller's actions were intentional; it is clear from both the Corrected Amended Complaint and both parties' filings in response to Defendants' motion to dismiss that the Wellington Controller knowingly produced and furnished false accounting entries. CAC ¶¶ 12, 50. *See also* Pl's Mem.in Opp'n to Mot. to Dismiss, 22 (Noting that "Defendants do not and cannot dispute that the Wellington Controller had actual knowledge that Shiloh's financial statements were false and misleading"). Plaintiffs also adequately plead that Shiloh included the Wellington Controller's fraudulent accounting in their later retracted public reports; the Complaint alleges that information supplied by the Wellington Controller was included in "the Company's . . . condensed, consolidated financial statements for Q1 2015 and Q2 2015 . . . [which] resulted in cumulative overstatements of reported gross profit . . . and net income." *Id.* ¶ 50.

What the parties dispute, however, is whether the law allows for the Wellington Controller's personal scienter to be imputed to Shiloh. In determining whether to impute an employee's scienter to the corporation, courts have considered the employee's role and rank within the company, as well as the employee's relationship to those who ultimately proffered the materially false information that defrauded investors. Plaintiffs contend that "numerous other courts in this District have imputed the scienter of employees similarly situated to the Wellington Controller to the corporate entities for which they work." (Mem. in Opp'n, 23). Defendants contend that the Wellington Controller is too low in Shiloh's corporate hierarchy for his actions to be imputed to the company.

In the closest approximation to a workable standard for determining corporate scienter, courts in this District have held that "management level" employees can serve as proxies for the

6

corporation in suits filed under the Exchange Act. *See In re Marsh & McLennan Companies, Inc. Securities Litigation,* 501 F.Supp 2d 452 (2006) (Kram, J). However, no court has defined what constitutes a "management-level" employee, and judges have imputed scienter to corporate defendants from employees who hold many different positions with varying degrees of seniority.

In *Marsh,* for example, plaintiffs adequately pleaded corporate scienter based on bid manipulation by an executive director of marketing. s. 501 F.Supp 2d at 482. Similarly, in *In re Sanofi Securities Litigation,* the court held that the Assistant Vice President of Special Projects and Vice President of U.S. Diabetes Unit were considered "management-level employees" for purposes of corporate scienter analysis, in part because they were "at the center" of the alleged illegal marketing scheme for which plaintiffs brought suit. *In re Sanofi Sec. Litig.,* 155 F. Supp. 3d 386, 409 (S.D.N.Y. 2016) (Castel, J). In another recent decision in this District, the court imputed to the company the misdeeds of its "vice president, assistant vice president, and senior managers." *Pennsylvania Public School Employees' Retirement System v. Bank of America Corp.*, 874 F.Supp 2d 321, 371-72 (S.D.N.Y 2006) (Pauley, J).

Additionally, Plaintiffs point to *Patel v. L-3 Communications Holdings Inc.*, in which Judge Caproni attributed the scienter of the CFO of one of the defendant company L-3's four subsidiary segments to L-3 itself. *Patel v. L-3 Commc'ns Holdings Inc.,* 2016 WL 1629325, (S.D.N.Y. Apr. 21, 2016) (Caproni, J.). In that case, the court held that the employee's position as CFO of a business segment comprising 36% of the corporation's total business qualified him as "sufficiently senior to serve as a proxy" for the purposes of corporate scienter. *Id.*[1] Similarly, in

---

[1] *See also Richman v Goldman Sachs Grp , Inc.,* 868 F. Supp. 2d 261, 281 n.10 (S.D.N.Y. 2012) (Crotty, J.) ("Accordingly, the scienter reflected in Goldman's Mortgage Department Head's statements can be attributed to Goldman."); *City of Pontiac Gen. Emps ' Ret. Sys v Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 369 (S.D.N.Y.

7

*Lorely Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC,* the Second Circuit imputed the scienter of a managing director, to whom they referred as a "high-level employee," to Wachovia bank itself. *Id.* at 177-78.[2] One judge in this District has also gone as far as to impute corporate scienter on behalf of "senior… analysts and investment bankers." *Lapin v. Goldman Sachs Grp, Inc*, 506 F.Supp 2d 221, 242 (2006) (Karas, J.).

Defendants contend that the employees at issue in each of these cases were more senior than the Wellington Controller, and that courts in this District have dismissed corporate scienter claims based on the actions of employees similarly situated to the Wellington Controller. They cite, for example, *In re Societe Generale Sec. Litig.*, 2010 WL 3910286 (S.D.N.Y. Sept. 29, 2010) [add judge's name], in which the court declined to find scienter on the part of both the corporate and individual defendants when one of the French Company's traders engaged in securities fraud. In that case, the trader worked "approximately five levels of supervision below each of the Individual Defendants." *Id.* at *3. However, that case involved whether the court could find that the Individual Defendants *knew* of the trader's fraudulent acts based on the trader's role in the company. The Court did not analyze whether the trader's wrongdoing, if proven deliberate, could be attributed to the corporate defendant, nor was it required to (the case was dismissed on other grounds). *Id.* Defendants next cite *Chill v. General Electric Co.*, but that case similarly considered

---

2012) (Rakoff, J.) (imputing to corporation the scienter of, among others, defendant Executive Vice President of Information Systems & Global Systems division); *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206 (S.D.N.Y. 2010) (Stein, J.) (finding corporate scienter based upon allegations such as the existence of a "report from Citigroup's quantitative credit strategy and analysis group" and a statement by "a Citigroup credit strategist"); *In re MBIA, Inc. Sec. Litig.*, 700 F. Supp. 2d 566, 590-91 (S.D.N.Y. 2010) (Karas, J.) (imputing to corporation the scienter of a Managing Director and Head of Real Estate and Secondary Markets and a Managing Director and Head of CDOs and Structured Products); *In re BISYS Sec. Litig.*, 397 F.Supp. 2d 430, 443 (S.D.N.Y.2005) (Kaplan, J.) (attributing the intentionally fraudulent behavior of senior management to the corporate defendant).

[2] The Court notes the Defendants' argument that the allegations in *Lorely* were premised on a violation of state securities law, rather than on a violation of the Exchange Act. However, the Second Circuit was guided by the same scienter considerations (and case law) as the Court is here. The case thus proves instructive.

only whether General Electric executives should have been on notice of a rogue bond trader's fraudulent activity. It did not address whether the trader's scienter could be imputed to General Electric. 101 F.3d 263 (2d Cir. 1996).

Defendants cite one case from the District of New Jersey that considered whether to impute a controller's scienter to his employer. In *Pathfinder Management,* the court declined to impute the scienter of the controller of a subsidiary corporation to the defendant corporation itself. *See Pathfinder Mgmt., Inc. v. Mayne Pharma, Inc.,* 2009 WL 4250061, at *9 (D.N.J. Nov. 25, 2009). However, because the controller worked for a subsidiary company and not the defendant (parent) company, the court did not consider him to be an employee or agent of the defendant company. *Id.* The court thus never reached the issue of whether a controller is sufficiently "senior" for the purpose of evaluating corporate scienter claims. The decision is of minimal guidance here, where the Wellington controller is clearly an employee of defendant Shiloh Industries.

### *Plaintiff's Allegations with Respect to the Wellington Controller*

Defendants have presented no case law that definitively precludes a finding of corporate scienter in this case, nor have they provided a meaningful standard by which to distinguish the Wellington Controller from employees whose scienter has been imputed to their company. However, while Plaintiffs do provide some factual basis for their corporate scienter claim in their Corrected Amended Complaint, their evidence is similarly weak.

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly,* 550 U.S. 544, 570 (2007). A claim is facially plausible when the supporting factual allegations "allow[] the court to

9

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a plaintiff has failed to "nudge" a claim "across the line from conceivable to plausible," a district court must dismiss the complaint. *Twombly*, 550 U.S. at 570.

The extent of Plaintiffs' pleading with regard to imputing the Wellington Controller's scienter to Shiloh is as follows: (1) The Wellington Controller was primarily responsible for managing the accounting at one of Shiloh's largest and most profitable facilities. CAC ¶¶ 15, 51; (2) The company's cost accountants, at least one of whom was a confidential witness in this case, reported to the Wellington Plant Controller. *Id.* ¶ 31; (3) The Wellington Controller reported to a group Controller, who in turn reported directly to Defendant Dugan, meaning that only one person stood between the Wellington Controller and the Individual Defendants. *Id*; (4) In its SEC Form 8-K filing following the fraud, Shiloh referred to the Wellington Controller as its "financial leader" at the Wellington Facility. CAC ¶ ¶ 51, 106; (5) The alleged fraud at the facility inflated the Company's net income during Q1 and Q2 2015 by about 50 percent and 13 percent, respectively. CAC ¶ 15, 73, 77, 85, 90, 108. Based on these facts, Plaintiffs urge the Court to find the Wellington Controller's rank akin to that of a "regional manager" or head of a particular practice group, roles for which courts in this district have imputed scienter. (Pl's Reply, 5).

Defendants maintain that the Wellington Controller was no more than a low-level "rogue employee." (Def. Mem. in Opp'n, 1, 13). Defendants also note that Plaintiff's Complaint "included no allegations that the Wellington Controller had any responsibility for anything outside the Wellington site; that he had any policy-making duties or powers; that he managed more than a handful of other employees …; or that he had any personal dealings with the individual

defendants." *Id.* at 6. While case law counsels in favor of viewing Plaintiffs' corporate scienter claim as conceivable, Plaintiffs have not nudged their claim across the line to plausible.

## IV. **RELIEF SOUGHT**

Plaintiffs first ask the Court to vacate its March 23, 2017 Order and Judgment and hold that Plaintiffs have adequately stated their claims against Shiloh. Because Plaintiffs have not sufficiently plead corporate scienter with respect to the Wellington Controller, the Court declines to vacate its previous Order and Judgment.

Plaintiffs alternatively ask for leave to file an amended complaint. Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a complaint shall be "freely" given when "justice so requires," although a "district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir.2007). Plaintiffs note in their memorandum in support of their motion for reconsideration that if granted leave to amend, they would "at a minimum seek to add new allegations related to their pleading of corporate scienter, ... additional details from CW1 indicative of the Wellington Controller's consciousness of guilt; allegations concerning the roles and responsibilities of the Wellington Controller and the Group Controller and their place in the corporate hierarchy; and further allegations concerning the imputation of corporate scienter and *respondeat superior*." (Mem. in Supp., 17).

11

Because there is a possibility that Plaintiffs could amend their complaint to rectify factual deficiencies and satisfy the pleading standard with respect to their corporate scienter claim, Plaintiffs are granted leave to amend for this limited purpose.

## V. **CONCLUSION**

Plaintiffs' request to vacate the Court's March 23, 2017 order is DENIED. Plaintiff's request to further amend the Corrected Amended Complaint is GRANTED. Plaintiffs shall file an amended complaint by August 6, 2017, with any changes to the Corrected Amended Complaint indicated by redline.

SO ORDERED.

Dated: New York, New York
July 7, 2017

*Kimba M. Wood*

KIMBA M. WOOD
UNITED STATES DISTRICT JUDGE